GEORGE SMITH, Appellant, *v.* WILLIAM MOORE, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

The opinion in the 24th Illinois Reports, page 512, between these parties, considered and corrected.

The purchaser of land under an executory contract, may, for some purposes, be held to be an equitable mortgagor; but as a general rule, the parties to such a contract hold to each other the relation of vendor and vendee; the latter has not the right to remove from the premises (except trade fixtures) any annexations or addition to them of a permanent character.

Under the twentieth section of the act in relation to mechanics' liens, an incumbrancer anterior to the mechanics' lien looks to the land as it was at the time of his incumbrance for his satisfaction, and the mechanic or the material man to the additions for his, unless the proceeds will pay both.

THE facts of this case are stated in the 24th volume of these Reports, page 512, and it is not deemed necessary to republish them.

T. DENT, for Appellant.

N. H. PURPLE, for Appellee.

WALKER, J. This cause comes before us again, on the same facts that were presented in the record when it was previously determined. (24 Ill. 512.) And we are asked to review the decision there announced. This we cheerfully do, lest in the press of business, we may have there arrived at an erroneous conclusion. We there held that a purchaser of land, by an executory contract, and let into possession, had the right to remove improvements placed upon the premises subsequent to the purchase. And having done so, or having ratified their removal by

another, he was entitled to the proceeds for which they were afterwards sold. On this argument it is urged that such a purchaser occupies to the vendor the relation of a mortgagor, and as such has no right to remove either prior or subsequent improvements from the premises. And that whatever was placed upon the land, if permanent in its nature, becomes a part of the land itself, and may not be severed by the purchaser.

The decision there announced, was based upon *Raymond* v. *White*, 7 Cow. 321, as referred to and commented upon by Hare and Wallace, in their notes to the case of *Elwes* v. *Mawe*, 2 Smith's Leading Cases, 99. And the appellant's counsel having referred in that argument to no authority contravening that doctrine, it was adopted, and acted upon as the rule. On the argument now made, our attention is called to numerous cases, which hold that the relation which the purchaser of land under an executory contract occupies to the seller, is that of a mortgagor. *Boon* v. *Chiles*, 10 Pet. 224 ; *Crockford* v. *Alexander*, 15 Ves. 138.

After a careful examination of these cases, together with others not referred to, we are satisfied that the rule is well settled, that for some purposes, and to some extent, he may be held to be an equitable mortgagor. But we do not understand these cases as asserting the doctrine that to all purposes, and to the full extent, he is a mortgagor. His relation is in some respects similar, and in others entirely different, and we can only say, that the relation of the parties to each other is that of vendor and vendee, with the rights and obligations which that relation imposes.

Upon a careful examination of all the authorities in our reach, and after as mature reflection as we are capable of giving to the subject, we have become satisfied that the conclusion previously announced in this case, is not sustained by authority, or by reason. The adjudged cases are numerous, and seem to be uniform, with the exception of *Raymond* v. *White*, that a purchaser under an unexecuted contract, occupying the relation of mortgagor to the premises, has no authority to remove annexations of a permanent character from the land. And this seems to be the settled doctrine, whatever be the reason or justice of the rule. At the ancient common law, all additions to the freehold became a part of it, and could not be removed by the tenant, or any one but the owner of the fee, or by his license. But in *Pool's case*, 1 Salk. 368, the rule was relaxed in favor of trade fixtures, which has since obtained and been recognized by the courts, both of Great Britain and this country.

But we apprehend the true reason why a purchaser, before the completion of the contract, has no authority to remove im-

provements which he may have placed upon the land, is not because he is a mortgagor, but because the law presumes they were annexed with the design of being permanent. The exception in favor of trade fixtures is made, because the annexations are supposed to be accessory to the calling of the tenant, and not to the land. That they are made, not with the design of being permanent, but of being severed at the end of the term. Whilst with the purchaser, the presumption is, that they are made with the design of their permanent engagement in connection with the land, and as an accessory to it. He makes them in view of their becoming his, when he shall have acquired the absolute ownership of the land by conveyance. But until that time, he has only the same right to them which he has to the freehold. In any event, the doctrine seems to be too well settled to be now disturbed.

In this view of the case, it becomes necessary to inquire whether appellee acquired a right to this recovery, under the operation of the mechanics' lien law. That the performance of the labor, and the furnishing the materials, for the purchaser and his assigns, in pursuance to the statute, gave him a lien on their interest in the premises, there is no doubt. But the question presented is, whether that lien is superior or subordinate to that of appellant. That he acquired the right by the sale and his purchase, on the enforcement of his lien, to pay the purchase money to appellant, and to compel a specific performance of the agreement, is certainly true. He clearly succeeded to all of the rights of Ray, Todd, and McMahan, whatever they were. But did he acquire any rights against appellant except to compel a conveyance, upon paying the purchase money, or of occupying the premises as his tenant, on the terms and conditions contained in the contract of sale.

It is contended, that the 20th section of the mechanics' lien law has given appellee a superior lien to that of the appellant, as vendor. That section provides, that "No incumbrance upon land created before or after the making of a contract, under the provisions of this chapter, shall operate upon the building erected or materials furnished, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied; and upon questions arising between previous incumbrancers and creditors, under the provisions of this chapter, the previous incumbrance shall be preferred to the extent of the value of the land at the time of making the contract, and the court shall ascertain, by jury or otherwise, as the case may require, what portion of the proceeds of any sale shall be paid to the several parties in interest." In the case of *Gaty* v. *Casey*, 15 Ill. 189, this court held, that the use of the materials furnished, and the

placing them in the building, and annexing them to the freehold, under the statute, creates a lien to the extent of their value. And if such materials should become severed from the freehold, the lien is not thereby destroyed. And that a court of equity will treat the money derived from their sale as it would the property before it was sold, and will pursue it into the hands of the party who has converted it into money.

In that case the material men furnished steam boilers, etc., for a mill, which was at the time incumbered to a large amount by deeds of trust to secure creditors. The material men filed a bill to enforce their lien, and, before a hearing, the mill was destroyed by fire, but the boilers, etc., were saved without material injury. They were then sold by the trustee, under the deeds of trust, for the benefit of creditors. In that case it also appeared, that the prior incumbrances under the deeds of trust exceeded the entire value of the property. Yet this court held, that the material men had a superior lien, under the 20th section, upon the materials furnished by them, and might pursue the money into the hands of the trustee who had severed and sold them. It would therefore seem, that the construction placed upon this section, if it can be said to be a construction of language so plain as to require none, is, that the prior incumbrancer must look alone to the land, independent of the improvements, for a satisfaction, and the mechanic or material man alone to the building erected, or materials furnished, for satisfaction of his lien, unless the proceeds of the sale are sufficient to satisfy both.

It is however contended, that the 17th section of the act limits the operation of the 20th. The former provides, that any person procuring work to be done or materials furnished on property in which he has an estate for life, or any other estate less than a fee simple, or if the land at the time is under mortgage or other incumbrance, he shall be deemed the owner, within the meaning of the statute, to the extent of his right and interest in the premises. And that a mechanic's or material man's lien shall bind the interest and estate of such person in the same manner as a mortgage. It gives to the lien creditor the right to have the right of redemption, or other right or estate and interest, in the land at the time of making the contract out of which the lien proceeds, sold, and the proceeds applied according to the provisions of the act. It is contended, that as improvements made by the mortgagor are primarily liable to the mortgage debt, and cannot be diverted from its payment without consent, that the mechanic or material man, under this section, acquires his lien upon the improvements or materials, subordinate to the superior lien of the mortgagee, as upon the land. It is true that this section has provided, that they shall hold their lien like a

mortgage, but if repugnant to the 20th section, it must yield to the latter expressed will of the legislature.

The latter section, as we have seen, confers a superior lien upon the mechanic or material man, upon the improvements and materials, to that of the prior incumbrancer. Under the latter section, the person holding the prior lien must look alone to the property as it was, before the mechanic's or material man's lien attached, and they must look to the improvement or materials, unless the proceeds of the sale is sufficient to satisfy both, or there is a surplus of either fund, which, if necessary, may be applied to the satisfaction of the other lien.

In the case of *Gaty* v. *Casey*, the fee was in the trustee, and the persons procuring the materials were in possession. So in this case, the fee was in appellant, and the persons procuring the labor were in possession. In that case, as in this, the property upon which the mechanics' lien existed had been detached from the freehold, and converted into money, before a decree had been rendered against the owner of the fee. In that case, as in this, the money was in the hands of a third person, and there, as here, the contest was for the money between prior incumbrances and the material man. And no reason is perceived why a distinction should be taken between this and that case. They appear to be similar in all of their essential features, and that must be held conclusive of this, and the decree of the court must therefore be affirmed.

· *Decree affirmed.*